UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

DESEAN HILL,

                                    Plaintiff,

                    v.

CITY OF NEW YORK,

                                    Defendant.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 20, 2015

13 Civ. 8901 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

In late 2013, Plaintiff Desean Hill, who is proceeding *pro se* and is currently incarcerated, was exposed to black smoke from fires lit by other inmates at the Anna M. Kross Center ("AMKC"), a jail located on Rikers Island. Plaintiff brings this action under 42 U.S.C. § 1983 against Defendant City of New York, alleging deliberate indifference in violation of the Eighth Amendment. Defendant now moves to dismiss the Complaint for failure to state a claim. For the reasons discussed herein, that motion is granted; however, because Plaintiff has introduced additional facts in opposing this motion that might constitute a viable constitutional claim, the Court grants Plaintiff leave to file an amended complaint, subject to the directives outlined in this Opinion.

**BACKGROUND**[1]

## A.   Factual Background

Plaintiff was incarcerated at AMKC in the latter part of 2013.

(Compl. 2).[2]  During this period — specifically, on October 30, November 9, and

November 11, 2013 — numerous other inmates set fire to their mattresses.  (*Id.*

at 3).  At some unspecified point during this period, New York City Department

of Corrections ("DOC") staff searched for and confiscated flammable materials

belonging to Plaintiff and other inmates.  (*Id.*).  However, despite this effort, the

fires continued to occur.  (*See id.*).

As a result, Plaintiff was exposed to "[b]lack [s]moke," which, he alleges,

"[p]lace[d] Plaintiff and others in a life or [d]eath situation."  (Compl. 3, 5).  On

two occasions, the smoke caused Plaintiff to lose consciousness.  (*See id.* at 3;

*see also* Pl. Opp. 1).  After each of these incidents, Plaintiff was seen by a

doctor.  (*See* Compl. 3).  Plaintiff showed the doctor "[b]lack [r]esidue" that had

---

[1]     The facts alleged herein are drawn from Plaintiff's Complaint ("Compl." (Dkt. #1)), and
are assumed true for the purposes of this Opinion.  Citations to the Complaint include
the page-numbering convention provided by this Court's electronic case filing (or "ECF")
system.  For convenience, Defendant's opening brief in support of the instant motion
(Dkt. #17) will be referred to as "Def. Br."; Plaintiff's opposition affirmation (Dkt. #28) as
"Pl. Opp."; and Defendant's reply brief (Dkt. #31) as "Def. Reply."  Additionally, taking
into account Plaintiff's "*pro se* status, the Court considers new factual allegations raised
in his opposition."  *Acevedo* v. *Fischer*, No. 12 Civ. 6866 (RA), 2014 WL 5015470, at *2
(S.D.N.Y. Sept. 29, 2014); *see also Ohuche* v. *Merck & Co.*, No. 11 Civ. 2385 (SAS), 2011
WL 2682133, at *2 (S.D.N.Y. July 7, 2011).  The manner in which Plaintiff's
supplemental allegations and claims can be, and has been, considered by this Court is
discussed later in the Opinion.

[2]     "AMKC, like all City facilities, is a jail, housing pre-trial detainees and individuals who
are sentenced for periods of less than one year[.]"  *Lloyd* v. *City of New York*, No. 12 Civ.
3303 (CM), 2014 WL 4229936, at *12 (S.D.N.Y. Aug. 4, 2014).  Although Plaintiff's
Complaint does not state whether he was imprisoned at AMKC post-conviction or
detained pre-trial, his opposition brief indicates the latter.  (*See* Pl. Opp. 2).  The
distinction is irrelevant for the purposes of this motion because, although a
Section 1983 claim during pre-trial detention implicates the Fourteenth Amendment
whereas a post-conviction Section 1983 claim implicates the Eighth Amendment, the
same standards and case law apply interchangeably.  *See* n.4 to this Opinion.

exuded from his nose, and voiced a complaint that his lungs were burning.  (*Id.* at 3, 5).  On each occasion, the doctor administered an "as[t]hma pump treatment," and sent him back to "the House."  (*Id.* at 3).

## B.   Procedural Background

On December 11, 2013, Plaintiff filed his Complaint, naming the DOC and the New York City Department of Correction Health Services ("CHS") as Defendants.  (Dkt. #1).  On December 23, 2013, the Court issued an Order substituting Defendant City of New York for DOC, and dismissing Defendant CHS because DOC and CHS are not entities that can be sued.  (*See* Dkt. #6 at 2-4).

In dismissing CHS, the Court specifically considered whether to substitute as a Defendant the New York City Department of Health and Mental Hygiene ("DOHMH").  The Court "decline[d] to substitute DOHMH for CHS, however, because Plaintiff fail[ed] adequately to allege any federal constitutional claim under § 1983 relating to his medical care."  (Dkt. #6 at 3). Additionally, with respect to municipal liability, the Court found that "Plaintiff fail[ed] to state any § 1983 claim for deliberate indifference to his serious medical needs against DOHMH under these standards.  He does not allege that DOHMH's policies, customs, decisions, actions, or failures to act caused any violation of his rights."  (*Id.* at 4).  The Court noted that the dismissal was "without prejudice to any amended pleading that Plaintiff may wish to bring, consistent with Rule 15(a) of the Federal Rules of Civil Procedure, asserting a federal claim for deliberate indifference to serious medical needs."  (*Id.*).

Further, the Court gave guidance to Plaintiff on how to amend his Complaint in such a way to state a claim against any individual doctors or nurses who he alleges were deliberately indifferent to his medical needs. (*See* Dkt. #6 at 4 ("[H]e may refer to that individual as 'John Doe' or 'Jane Doe' in both the caption and the body of any amended complaint that Rule 15(a) permits him to file."); *id.* at 4 n.4 ("For example, a defendant may be identified as: 'Doctor John Doe #1 on duty August 31, 2010, at Sullivan Correctional Facility, during the 7-3 p.m. shift.'")).

No amendment was filed, and, on March 28, 2014, Defendant City of New York requested a pre-motion conference in anticipation of filing a motion to dismiss. (Dkt. #10). Pursuant to the briefing schedule set forth at the April 23, 2014 pre-motion conference (*see* Dkt. #12, 14), Defendant moved to dismiss on May 27, 2014 (Dkt. #16); Plaintiff filed his opposition on May 19, 2014 (Dkt. #28); and the motion was fully briefed as of the filing of Defendant's reply on August 25, 2014 (Dkt. #32).[3] The Court now considers Defendant's motion to dismiss.

## DISCUSSION

### A.   Applicable Law

When considering this motion, the Court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be

---

[3]   On July 25, 2014, Plaintiff confirmed that he intended his letter of May 19, 2014, to be considered his opposition to Defendant's motion to dismiss. (*See* Dkt. #30). Plaintiff was apparently able to oppose the motion based on receipt of Defendant's pre-motion letter, which advanced the same arguments contained within the Defendant's opening brief. (*See* Dkt. #28, 30).

true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff will survive a motion to dismiss if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 569 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [plaintiff's] claims across the line from conceivable to plausible." (internal citation omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  That said, the liberal pleading standard accorded to *pro se* litigants "is not without limits, and all normal rules of pleading are not absolutely suspended."  *Stinson* v. *Sheriff's Department*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

**B.      Analysis**

Plaintiff brings this claim under Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Plaintiff's claim is best understood as a claim for two separate instances of alleged deliberate indifference in violation of the Eighth Amendment: first, Defendant's disregard of the risk of injury posed by inmates setting fires; and second, Defendant's failure adequately to treat Plaintiff's injuries after he inhaled smoke from the fires. Because Plaintiff has failed adequately to allege these constitutional violations, his Section 1983 claim fails. Additionally, even if Plaintiff had alleged a constitutional violation, because he brings claims against the City of New York without alleging that a municipal policy or custom caused the alleged violation, his claim fails for this independent reason.

**1.      Plaintiff Fails to Demonstrate Deliberate Indifference to Risk Stemming from Mattress Fires**

**a.      Applicable Law**

The Court begins with Plaintiff's claim that prison officials were deliberately indifferent to the risk of mattress fires. In order to state an Eighth Amendment claim for failure to protect an inmate, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that prison officials acted with deliberate indifference to that risk and the inmate's safety. *See Farmer* v. *Brennan,* 511 U.S. 825, 836 (1994).[4] A

---

[4]      The argument raised by Plaintiff in his opposition, that he had not been "[c]onvicted or sentence[d]" at the time of his confinement (*see* Pl. Opp. 2), makes no difference to the

plaintiff must show that prison officials had knowledge of, and disregarded, "an excessive risk to inmate health or safety." *Id.* at 837.

Courts apply a two-pronged test to analyze deliberate indifference claims under the Eighth and Fourteenth Amendments.  First, under the objective prong, the alleged deprivation must be "sufficiently serious." *Salahuddin* v. *Goord,* 467 F.3d 263, 279 (2d Cir. 2006) (citation omitted).  Second, under the subjective prong, a plaintiff must demonstrate that the charged defendant acted with a "sufficiently culpable state of mind." *Id.* at 280 (citation omitted). Accordingly, to state a claim, a plaintiff must allege facts showing that a defendant knew of and disregarded an excessive risk of inmate health and safety or that he was aware of facts from which it could reasonably be inferred that a substantial risk of serious harm existed. *Farmer,* 511 U.S. at 837; *Caiozzo,* 581 F.3d at 71.

### b.   The Mattress Fires

Plaintiff has alleged a sufficiently serious deprivation that occurred when smoke entered his cell and caused him to lose consciousness. *See, e.g., Davis* v. *New York,* 316 F.3d 93, 100-01 (2d Cir. 2002) ("[The plaintiff] further alleged that the smoke caused him to suffer dizziness, difficulty breathing, blackouts,

---

analysis.  Although deliberate indifference claims brought by post-conviction prisoners arise under the Eighth Amendment and claims for deliberate indifference brought by pre-trial detainees arise under the Fourteenth Amendment, the Second Circuit has found that "[c]laims for deliberate indifference ... should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo* v. *Koreman,* 581 F.3d 63, 72 (2d Cir. 2009); *see, e.g., Blackson* v. *City of New York*, No. 14 Civ. 452 (VEC), 2014 WL 6772256, at *5 (S.D.N.Y. Dec. 2, 2014) ("In any event, courts evaluate claims for deliberate indifference under the same two-pronged standard ... regardless of whether they are brought under the Eighth or Fourteenth Amendment.").  Accordingly, the Eighth Amendment provides the applicable framework here, regardless of Plaintiff's status at the time he was at AMKC.

and respiratory problems.  These assertions are not mere conclusory allegations, but may be sufficient to create an issue of fact as to the level of smoke to which [plaintiff] was exposed and, thus, whether his Eighth Amendment rights were violated."); *Wright* v. *N.Y.S. Dep't of Corr. Servs.*, No. 06 Civ. 3400 (RJS) (THK), 2008 WL 5055660, at *10 (S.D.N.Y. Oct. 10, 2008) ("Exposure to unsafe levels of toxic substances, such as tobacco smoke or asbestos, may suffice as sufficiently dangerous conditions to satisfy the objective element of an Eighth Amendment claim."), *report and recommendation adopted*, 2008 WL 5084193 (S.D.N.Y. Nov. 24, 2008), *aff'd*, 372 F. App'x 175 (2d Cir. 2010).

Plaintiff has *not*, however, satisfied the requirement of alleging that prison officials knew of and disregarded the risk posed by mattress fires. Although the details provided in the Complaint are scant, Plaintiff has alleged that prison officials confiscated flammable materials in order to prevent these very fires from happening.  And while Plaintiff has alleged certain statements by DOC personnel in opposing this motion (on which more later), even they are too imprecise to sustain his claim.  Without more detail — specifically, with respect to the timing of the fires and the confiscation of materials — the Complaint demonstrates only that prison officials appreciated a risk and took reasonable measures to abate the anticipated harm to inmates.  These allegations are insufficient to show the prison officials' deliberate indifference to Plaintiff's welfare.  *Compare Wells* v. *Thieret*, 14 F.3d 605 (7th Cir. 1994) (affirming dismissal at summary judgment stage where plaintiff "argue[d]

that … officials could have taken quicker and more effective safety measures to prevent and control the exposure to smoke, such as restricting matches and combustible materials by inmates in segregation," because plaintiff merely "challenge[d] the reasonableness of the defendants' efforts"), *with Smolen* v. *Fischer*, No. 12 Civ. 1856 (PAC) (AJP), 2012 WL 3609089, at *6 (S.D.N.Y. Aug. 23, 2012) ("[Plaintiff] sufficiently pleads that defendants disregarded the excessively risky conditions because the storm windows were not replaced with safer windows between the time previous fires had broken out and the day of the fire at issue in this case."). Accordingly, Plaintiff's allegations regarding the prison officials' response to the risk of mattress fires fail to state a claim for deliberate indifference.

### 2. Plaintiff Fails to Allege Defendant's Deliberate Indifference to a Serious Medical Need

#### a. Applicable Law

The Court next turns to Plaintiff's claim regarding his medical treatment. A serious medical condition requires the existence of "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal citation omitted); *see also Jamison* v. *Metz*, 541 F. App'x 15, 21 (2d Cir. 2013) (summary order). Plaintiff must allege that Defendant acted with "a sufficiently culpable state of mind," equivalent to criminal recklessness. *Hathaway*, 99 F.3d at 553 (internal citation omitted); *see also Nielsen* v. *Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). Such a state of mind "'entails something more than mere negligence[, but] something less than acts or omissions for the very purpose of causing harm or

with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer,* 511 U.S. at 835).

Additionally, the law is clear that the medication a doctor selects to treat a patient's conditions is a medical judgment and does not rise to the level of deliberate indifference.  *See Hill* v. *Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking." (internal citation omitted)); *Chance* v. *Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *Santana* v. *City of New York*, No. 13 Civ. 3034 (SAS), 2014 WL 1870800, at *5 (S.D.N.Y. May 8, 2014) ("[D]eliberate indifference is more substantial than mere disagreement over a course of treatment, negligence or even medical malpractice."); *Thomas* v. *Westchester Cnty.*, No. 12 Civ. 6718 (CS), 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013) ("[T]reating pain with over-the-counter, as opposed to prescription, medication is a disagreement over treatment that does not rise to the level of deliberate indifference[.]" (internal citation omitted)).

**b.   Plaintiff's Medical Treatment**

As an initial matter, the Court has already assessed Plaintiff's claims regarding his medical treatment in the December 23, 2013 Order, and found these claims to be insufficient.  (*See* Dkt. #6 ("Plaintiff fail[ed] adequately to allege any federal constitutional claim under § 1983 relating to his medical

care.")).  The arguments submitted in connection with the instant motion fail to compel a different conclusion.

Significantly, Plaintiff does not allege that he was denied treatment after he lost consciousness and suffered from a burning sensation in his lungs.  To the contrary, he alleges that he was treated, and that he received an asthma pump.  (*See* Compl. 3 ("I was given an as[t]hma pump treatment and sent [b]ack to the House when I showed the [d]octor[] [b]lack [r]esidue from my nose on tissue with [c]omplaints of lung [b]urning.")).  Moreover, it is not clear from the Complaint how, if at all, the asthma pump treatment was inappropriate to treat Plaintiff's condition, which is alleged to be asthma.  (*See id.* at 5; Pl. Opp. 2).  The Complaint contains only a conclusory allegation that CHS "fail[ed] to [administer] [p]roper [m]edical treat[ment] … when it's clear Plaintiff [h]as as[t]hma." (Compl. 5).  In short, Plaintiff's conclusory allegations are insufficient.  *Rolon*, 517 F.3d at 149.

Even construing the allegations to raise Plaintiff's strongest possible argument, the Court finds — at most — that Plaintiff has alleged that the treatment he received was inadequate.  "Where, as here, a plaintiff's complaints reflect mere disagreement with the course of treatment he receives, a plaintiff fails to adequately allege deliberate indifference."  *Rembert* v. *Cheverko*, No. 12 Civ. 9196 (KBF), 2014 WL 3384629, at *7 (S.D.N.Y. July 10, 2014); *see also Law* v. *Corizon Med. Servs.*, No. 13 Civ. 5286 (KBF), 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) ("While plaintiff alleges, generally, that the Rikers medical staff should have done a better job treating his conditions …, this

11

conclusory allegation alone is insufficient to allege the required state of mind for deliberate indifference."); *Colon* v. *City of New York*, No. 08 Civ. 3142 (HB), 2009 WL 1424169, at *7 (S.D.N.Y. May 21, 2009) ("Nor can deliberate indifference be established where an inmate might prefer a different treatment or feels he did not receive the level of medical attention he desired."). Accordingly, Plaintiff has failed to allege that the treatment he received constituted deliberate indifference to a serious medical need.

### 3. Plaintiff Fails to Allege the Existence of a Municipal Policy, Practice, or Custom

At this point, it bears emphasizing that (i) there is only one named defendant in this case, the City of New York, and (ii) as a municipal defendant, the City can only be liable for Section 1983 violations under certain circumstances. For the reasons set forth in the preceding subsection, the Court has concluded that no underlying constitutional violation has been alleged. Ordinarily, therefore, there would be no need to address the issue of municipal liability. *Segal* v. *City of New York*, 459 F.3d 207, 219-20 (2d Cir. 2006) (holding that district court need not reach municipal liability claim where underlying constitutional claims were properly dismissed). However, because Plaintiff will be given one final opportunity to amend, the Court writes to explain why the current Complaint also fails adequately to allege municipal liability.

Municipalities may be sued directly for constitutional violations pursuant to Section 1983, *see Monell*, 436 U.S. 658, 694 (1978), but cannot be held liable for the acts of their employees under the doctrine of *respondeat superior*,

*see Pembaur* v. *City of Cincinnati*, 475 U.S. 469, 478 (1986).  To state a claim

for municipal liability — otherwise known as a *Monell* claim — a plaintiff must

show that a violation of his constitutional rights resulted from a municipal

policy or custom.  *Monell*, 436 U.S. at 694.  A plaintiff may establish such a

violation in a number of ways, including by presenting evidence of

> [i] an express policy or custom, [ii] an authorization of
> a policymaker of the unconstitutional practice,
> [iii] failure of the municipality to train its employees,
> which exhibits a "deliberate indifference" to the rights
> of its citizens, or [iv] a practice of the municipal
> employees that is "so permanent and well settled as to
> imply the constructive acquiescence of senior
> policymaking officials."

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (quoting

*Pangburn* v. *Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)).

Here, the Complaint contains no allegations that Plaintiff's exposure to

the smoke was related in any way to a policy, custom, or practice on the part of

Defendant City of New York.  The same is true with respect to Plaintiff's claim

that his medical treatment was inadequate.  Therefore, even assuming

*arguendo* that Plaintiff alleged a constitutional violation that could support a

claim under Section 1983, Plaintiff's Complaint *against the City* would still be

dismissed, because of the absence of any allegation of an unconstitutional

policy, practice, or custom by the City of New York.  *See Peek* v. *City of New*

*York*, No. 13 Civ. 4488 (AJN), 2014 WL 4160229, at *4 (S.D.N.Y. Aug. 18, 2014)

("Assuming (purely arguendo) that Plaintiff has successfully pled a violation of

his constitutional rights, he has not alleged any facts plausibly suggesting that

the [alleged violation] took place pursuant to a municipal custom or policy.").[5]
Plaintiff's claims against the City of New York are therefore dismissed on this
additional ground.

### 4.    Plaintiff Is Given Leave to Amend

Plaintiff's opposition brief contains both new factual allegations to
support his deliberate indifference claims and new claims of constitutional
violations.  As to the former, because Plaintiff is proceeding *pro se*, the Court
may consider these new allegations in resolving Defendant's motion to dismiss.
*See generally Rodriguez* v. *Rodriguez*, No. 10 Civ. 891 (LGS), 2013 WL 4779639,
at *1 (S.D.N.Y. July 8, 2013) (collecting cases); *Torrico* v. *Int'l Bus. Machs. Corp.*,
213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002) (Lynch, J.) (noting that a court
may consider factual allegations contained in a *pro se* litigant's opposition
papers and other court filings).  As to the latter, if statements made outside the
operative complaint demonstrate that a *pro se* plaintiff could state a claim, if
allowed to amend, the court should grant leave to amend.  *See Torrico*, 213 F.
Supp. 2d at 400 n.4 (citing *Cruz*, 202 F.3d at 597-98; *Cortec Indus., Inc.* v. *Sum
Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  Consequently, the Court

---

[5]     To the extent Plaintiff elects to file an amended complaint against the City, or any other
municipal entity, the Court cautions him that conclusory allegations will not suffice.
*See, e.g.*, *Triano* v. *Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012)
("[M]ere allegations of a municipal custom or practice of tolerating official misconduct
are insufficient to demonstrate the existence of such a custom unless supported by
factual details."); *Edwards* v. *City of New York*, No. 03 Civ. 9407 (PAC), 2005 WL
3466009, at *11 (S.D.N.Y. Dec. 19, 2005) (stating that the *Monell* doctrine would be
rendered "sterile" if "mere conclusory allegations of a few isolated incidents" of
constitutional wrongdoing were sufficient to hold the municipality liable).

considers the statements in Plaintiff's opposition affirmation in analyzing whether Plaintiff has stated a claim, or could state a claim if allowed to amend.

Nothing in Plaintiff's opposition submission sheds light on his claim of deliberate indifference relating to the medical treatment he received.  However, during the pre-motion conference (*see* Dkt. #14 at 6-8), Plaintiff did provide additional details regarding his treatment.  On the issue of deliberate indifference relating to the mattress fires, Plaintiff alleges in his opposition that he notified DOC staff on numerous occasions of the fires, but was met with responses that "inmates ... can burn the house down" and that Rikers Island staff could then go home early and receive hazard pay.  (Pl. Opp. 2).  With additional specifics regarding his medical treatment, and regarding the frequency, dates, and contexts of his communication with DOC staff, Plaintiff may be able — though this is far from certain (*see, e.g.*, Def. Reply 4) — to plead a claim for deliberate indifference.

Plaintiff also alleged in his opposition submission, for the first time, that he was "retaliated against" by prison officials because he filed a civil complaint and because he cooperated with the Inspector General's Office on Rikers Island.  (Pl. Opp. 2).  Specifically, Plaintiff alleges that "[a]ll [p]roducts and clothing w[ere] t[a]ken[.]  This in it[]self violates the 14th and 8th Amendment." (*Id.*).  As Defendant suggests (*see* Def. Reply 6-8), this new claim would most likely be construed by a court as either a First Amendment, Fourth Amendment, or Fourteenth Amendment violation.  *See Rodriguez* v. *McClenning*, 399 F. Supp. 2d 228, 236 (S.D.N.Y. 2005) ("The First and

Fourteenth Amendments protect prison inmates who file a grievance from retaliation by prison officials, and such retaliation is actionable under section 1983.").  *But see United States* v. *Cohen*, 796 F.2d 20, 24 (2d Cir. 1986) ("[E]stablished decisional law holds that [a] search [by a prison official] would *not* be subject to [a Fourth Amendment] challenge, regardless of whether security needs could justify it." (emphasis added)).  If Plaintiff chooses to file an amended complaint, he may include this new claim of retaliation.  *See generally* Fed. R. Civ. P. 18 ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."); *cf.* Fed. R. Civ. P. 20 (noting that a plaintiff may join defendants into one action if "any right to relief is asserted against them … with respect to or arising out of the same transaction, occurrence or series of occurrences" and if "any question of law or fact common to all defendants will arise in the action").  That said, it would behoove Plaintiff to consider the issues raised by Defendant in pages 6 through 8 of its reply brief.

## CONCLUSION

For the reasons discussed herein, Defendant's motion to dismiss is GRANTED without prejudice and with leave to replead.  The Clerk of Court is directed to terminate Docket Entry 16.

If Plaintiff elects to file an amended complaint, he should state specifically (i) what serious harm he suffered as a result of the exposure to smoke; (ii) who, if anyone, had notice of the risk of the harm; (iii) when and

16

how notice was given to those individuals; (iv) what steps, if any, those individuals took in response to the notice; and (v) when, in relation to the inmate fires, such steps were taken.  Plaintiff should also identify details regarding his medical treatment, including (i) how the treatment he received was inadequate; (ii) whether Plaintiff objected to the course of treatment; (iii) what explanation, if any, the medical professionals provided for the treatment; and (iv) what harm he suffered, or continues to suffer, as a result of the course of treatment.  Details such as this were hinted at during the pre-motion conference (*see* Dkt. #14 at 6-8), and alluded to in Plaintiff's opposition (*see* Pl. Opp. 2); in order to state a claim, however, these facts must be alleged in an amended complaint.  Finally, Plaintiff may include the claim of retaliation to which he refers in his opposition submission.

To emphasize again what the Court stated in its December 23, 2013 Order, to the extent Plaintiff wishes to name as Defendants any individual City employees — either those DOC employees who knew about the risk of inmates setting fires or the CHS medical professionals who treated or failed to treat Plaintiff — he must take this opportunity to do so.

17

Any amended complaint filed in accordance with this Order must be filed by **February 20, 2015.**  If Plaintiff does not file an amended complaint by February 20, 2015, the Court will issue an order closing this case within seven days of that deadline.  If Plaintiff files an amended complaint in accordance with this Opinion, Defendant will move or respond within 30 days of service.

SO ORDERED.

Dated:      January 20, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

_A copy of this Order was mailed by Chambers to:_

Desean Hill
DIN#14A0857
Auburn Corr. Facility
P.O. Box 618
Auburn, NY 13024